United States Bankruptcy Court
Southern District of Texas

**ENTERED**

June 02, 2022

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 19-70068** |
| **ROBERT MARCUS MICHELENA,** | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |
| | § | |
| **MONICA MICHELENA,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 19-7009** |
| | § | |
| **ROBERT MARCUS MICHELENA,** | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION</u>

Monica Michelena, the former spouse of Robert Marcus Michelena, seeks a nondischargeable judgment under §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6). The Court conducted a five-day trial commencing on February 15, 2022, and concluding on March 16, 2022. For the reasons set forth herein, the Court finds that Monica Michelena's request that this Court find certain sums, including those contained in Claim No. 7-7, discharged pursuant to §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6) is denied. Nevertheless, Monica Michelena's Claim No. 7-7 is nondischargeable pursuant to § 523(a)(15). Monica Michelena's other claims, Claim Nos. 8-2, 9-2, and 11-2, are nondischargeable pursuant to § 523(a)(5).

## I.   BACKGROUND

### A.  Procedural History

On March 4, 2019, Robert Marcus Michelena ("*Defendant*" or "*Debtor*") filed his initial petition and schedules under chapter 11 of the Bankruptcy Code, initiating the instant bankruptcy

case.[1]  Debtor's case was later converted to a chapter 7 case.[2]  In the underlying bankruptcy case Monica Michelena ("*Plaintiff*") filed the following general unsecured proofs of claim: (1) Claim No. 8-2 in the amount of $21,293.09 for "Child Support, Cause No. F-2230-05-2"; (2) Claim No. 9-2 in the amount $9,827.58 for "Order on Amended Motion for Enforcement of Child Support, Cash, Medical Support and Medical Educational Expenses"; (3) Claim No. 11-2 in the amount of $13,650.31 for "Order on Amended Motion for Enforcement of Child Support, Cash, Medical Support and Medical Educational Expenses"; and (4) Claim No. 7-7 in the amount of $1,165,786.34 for "Number 13-16-00349-CV 13th Court of Appeals Memorandum Opinion, signed 3/19/2020 Number 2012-DCL-4282-E Judgment on New Trial for Property Division, signed 6/1/2016" ("*Claim 7-7*").

On July 5, 2019, Plaintiff filed the instant complaint seeking a nondischargeable judgment of certain obligations of Defendant under §§ 523(a)(2)(A), (a)(2)(B), (a)(4) and (a)(6) ("*Complaint*").[3]  Claim 7-7 forms the basis of Plaintiff's Complaint.[4]  Plaintiff amended her Complaint on July 13, 2020.[5]  In response, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[6]  This Court denied Defendant's motion,[7] and struck the amended complaint.[8]  Plaintiff amended her Complaint again on December 15, 2020.[9]  On December 1, 2021, Debtor received a general discharge in his chapter 7 bankruptcy case.[10]

---

[1] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e., §) thereof refers to the corresponding section in 11 U.S.C. "Bankr. ECF No." refers to docket entries made in the Debtor's bankruptcy case, No. 19-70068.  Entries made in Plaintiff's 2019 adversary proceeding 19-7009 shall take the format ECF No. __.

[2] Bankr. ECF No. 411.

[3] ECF No. 1.

[4] Claim Nos. 8-2, 9-2, and 11-2 are Domestic Support Obligations under §§ 507(a)(1)(A) or (a)(1)(B) and are not dischargeable pursuant to § 523(a)(5).

[5] ECF No. 22.

[6] ECF No. 23.

[7] ECF No. 27.

[8] ECF No. 37.

[9] ECF No. 49.

[10] Bankr. ECF No. 499.

On January 11, 2021, Defendant filed his answer.[11]  Plaintiff and Defendant filed their "First Amended Joint Pretrial Order" on December 30, 2021.[12]  On January 4, 2022, Plaintiff amended her Complaint for a final time raising the same claims raised in the original Complaint ("*Second Amended Complaint*").[13]  Defendant did not amend his answer but did file a trial brief on February 9, 2022.[14]

After a five-day trial, this Court ordered the parties to file post-trial briefing.[15]  On April 13, 2022, Defendant filed "Defendant's Post-Trial Brief" ("*Defendant's Post-Trial Brief*").[16]  On May 13, 2022, Plaintiff filed "Complainant's Trial Brief" ("*Plaintiff's Post-Trial Brief*").[17]  All briefing has been submitted and the matter is now ripe for determination.

## B. Stipulated Facts[18]

### 1. Plaintiff and Defendant's divorce

On May 18, 2005, Plaintiff filed a petition for divorce.[19]  On May 24, 2005, Defendant filed his counter-petition for divorce.[20]  In the divorce proceeding, Defendant filed his "Inventory and Appraisement of Robert M. Michelena."[21]  On July 23, 2009, the Final Decree of Divorce ("*Divorce Decree*") was entered.[22]  On appeal, the Thirteenth Court of Appeals of Texas affirmed

---

[11] ECF No. 50.
[12] ECF No. 89.
[13] ECF No. 96.
[14] ECF No. 101.
[15] See March 16, 2022 Min. Entry.
[16] ECF No. 123.
[17] ECF No. 124.
[18] ECF No. 93 at 8-21.
[19] ECF No. 81-11.
[20] ECF No. 75-6.  The Court notes that the parties' First Amended Joint Pretrial Order states that Defendant's counter-petition for divorce was filed on June 12, 2012.  ECF No. 93 at 8, ¶ 6(3).  However, the evidence cited in the First Amended Joint Pretrial Order, ECF No. 75-6, shows that the counter-petition for divorce was originally filed on May 24, 2005.
[21] ECF No. 78-7.
[22] ECF No. 75-2.

in part and reversed in part the property division and remanded the case to the trial court for a new trial ("*Court of Appeals Decision*").[23]

On November 20, 2013, Defendant filed his "Inventory and Appraisement of Robert Michelena" (together with Defendant's Inventory and Appraisement of Robert M. Michelena, "*Sworn Inventories*") in the 357th District Court in Cameron County, Texas.[24]  On June 1, 2016, the 357th District Court entered it's "Judgment on New Trial for Property Division" ("*357th District Court Judgment*").[25]  The 357th District Court Judgment awarded Plaintiff the entire value of an A.G. Edwards Account x-5675 ("*A.G. Edwards Account*") and a Compass CD 322200 ("*Compass CD*") because Defendant failed to include those accounts in his Sworn Inventories.[26]  In his Post-Trial Brief, Defendant stipulated that he did not disclose the A.G. Edwards Account or the Compass CD in his Sworn Inventories.[27]  The 357th District Court Judgment also awarded Plaintiff $40,000 for a settlement with Texas State Bank received by Defendant ("*Settlement*") because Defendant likewise failed to disclose that Settlement.[28]  The remainder of the community property was divided in such manner that each party received 50%.[29]  The 357th District Court did not find that Defendant acted fraudulently, willfully and maliciously, or intentionally or that Defendant was a fiduciary for Plaintiff.[30]

On June 29, 2016, Defendant appealed the 357th District Court Judgment to the Court of Appeals.[31]  On March 19, 2020, the Court of Appeals entered its Memorandum Opinion, affirming

---

[23] ECF No. 75-3.
[24] ECF No. 78-9.
[25] ECF No. 75-4.
[26] *Id.* at 3–4.
[27] ECF No. 123 at 12–13, ¶ 44.
[28] ECF No. 75-4 at 3.
[29] ECF No. 93 at 13, ¶ 6(44).
[30] *Id.* ¶ 6(46)–(49).
[31] ECF No. 75-5.

and reforming the 357th District Court Judgment ("*Court of Appeals Order*").[32]  The new judgment entered against Defendant was for $938,041.17, plus post judgment interest.[33]  On June 16, 2020, Defendant appealed to the Texas Supreme Court.[34]  The Texas Supreme Court denied Defendant's Petition for Review.[35]

### 2.  Passing of Defendant's mother

On April 8, 2013, Defendant's mother, Loretta Michelena ("*Loretta*") passed away.[36] Loretta's Last Will and Testament provided, inter alia, that: (1) all her furniture was to be equally divided between her sons, Defendant and Ronald M. Michelena; (2) her lady's Rolex watch was to go to Defendant; (3) her pear cut diamond ring was to go to Defendant; and (4) the remainder of her estate and property was to be divided equally among Defendant and Ronald M. Michelena.[37]

### 3.  Plaintiff's pre-petition collection efforts

On February 22, 2017, Plaintiff filed an Application for Writ of Garnishment After Judgment, seeking to garnish the accounts under Defendant's name with BBVA Compass Bank and Wells Fargo's Advisors.[38]  BBVA Compass Bank held $12,987.95 in an account belonging to Defendant.[39]

On May 9, 2018, Plaintiff filed a writ of execution with the Cameron County Sheriff to execute on property, known as the Marshall Hutts property, which is partially owned by Defendant, in satisfaction of the 357th District Court Judgment.[40]  The sale of the Marshall Hutts property was

---

[32] ECF No. 76-1.
[33] *Id.*
[34] ECF No. 81-3.
[35] ECF No. 81-2.
[36] ECF No. 78-15.
[37] *Id.*
[38] ECF No. 81-6.
[39] ECF No. 81-7.
[40] ECF No. 81-4.

set to occur on August 7, 2018.[41]  However, due to a previous bankruptcy filing by Defendant in

case number 18-70282 on August 2, 2018, the sale was stayed.[42]  On January 31, 2019, Plaintiff

filed a second writ of execution with the Cameron County Sheriff to execute on the Marshall Hutts

property.[43]  The sale of Defendant's interest in the Marshall Hutts property was set to occur on

March 5, 2019.[44]

### 4.  Certain of Defendant's assets

On August 2, 2018, Defendant received $61,669 from Golden Eagle Resources II, LLC for

a 5-year leasehold interest in Defendant's property in Belmont County, Texas.[45]  The interest pay-

ment by Golden Eagle Resources, LLC was wire transferred to Defendant's state court attorney

Joseph Preston's IOLTA.[46]  In 2016 and 2017, Defendant withdrew $11,000 and $84,597, respec-

tively, from his New York Life Trust Company account.[47]  Defendant also deposited $26,000 from

his New York Life Trust Company account into Joseph Preston's IOLTA.[48]

## II.  CONCLUSIONS OF LAW

### A.  Jurisdiction, Venue, and Constitutional Authority to Enter a Final Order

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and now exercises its jurisdic-

tion in accordance with In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D.

Tex. May 24, 2012).  Furthermore, a determination as to the dischargeability of a particular debt

is a core matter under 28 U.S.C. § 157(b)(2)(I).  Because this is a core matter expressly brought

---

[41] *Id.*

[42] *See* ECF No. 81-12 at 3.

[43] ECF No. 81-5.

[44] *Id.*

[45] ECF No. 80-7.  Plaintiff complains about two other mineral interest payments received by Defendant, one on August 2, 2017, from Golden Eagle Resources II, LLC for $61,669 and the other on June 19, 2017, also from Golden Eagle Resources II, LLC for $109,000.  ECF No. 96 at 7.  Plaintiff and Defendant did not mention these other two payments in the stipulated facts section of their First Amended Joint Pretrial Order.  ECF No 89.

[46] ECF No. 80-7.

[47] ECF Nos. 78-2, 80-7.

[48] ECF No. 80-7.

under the Code—11 U.S.C. § 523—the Supreme Court's holding in *Stern v. Marshall* is not applicable and this Court holds constitutional authority to enter a final order and judgment with respect to the core matter at bar.[49]  Additionally, both Plaintiff and Defendant have consented to the entry of final orders by this Court.[50]

Finally, venue is governed by 28 U.S.C. §§ 1408 and 1409.  Here, venue is proper because the Court presided over the underlying bankruptcy case.

### III.  ANALYSIS

### A.  Forfeiture of Federal Rule of Bankruptcy Procedure 4007(c) limitation defense

As a preliminary matter, the Court, sua sponte, must consider the application of Federal Rule of Bankruptcy Procedure 4007(c).  Rule 4007(c) states that "a complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a) . . . ."[51]  In the instant case, Debtor filed a petition under chapter 11 of the Bankruptcy Code on March 4, 2019.[52]  The first date set for the meeting of creditors was April 11, 2019, and the deadline to file a dischargeability complaint was June 10, 2019.[53]  Plaintiff filed her Complaint on July 5, 2019, well outside the June 10, 2019 deadline.[54]

In *Kontrick v. Ryan*, the Supreme Court held that the deadline for objecting to a debtor's discharge under Rule 4004(a) was not jurisdictional.[55]  The *Kontrick* Court reasoned that "essentially the same time prescriptions apply" under Rule 4004(a) and 4007(c).[56]  Since *Kontrick* was decided, several bankruptcy courts in the Fifth Circuit have held that the deadline for objecting to

---

[49] 564 U.S. 462 (2011).
[50] ECF Nos. 55, 56.
[51] FED. R. BANK. P. 4007(c).
[52] Bankr. ECF No. 1.
[53] Bankr. ECF No. 6.
[54] ECF No. 1.
[55] 540 U.S. 443, 447 (2004).
[56] *Id.* at 448 n.3.

discharge under §§ 523(a)(2), (a)(4), and (a)(6) is similarly non-jurisdictional.[57]  Because the time

limit is not jurisdictional, "a debtor may forfeit his right to assert such limitation as a defense if he

or she does not 'raise the Rule's time limitation before the bankruptcy court reaches the merits of

the creditor's objection to discharge.'"[58]  Defendant never objected to Plaintiff's untimely filing

of her Complaint.

      Accordingly, Debtor has forfeited his right to assert any limitation as a defense.

### B.  Nondischargeability of Debt

      Pursuant to § 523(c)(1):

> [T]he debtor shall be discharged from a debt of a kind specified in paragraph (2),
> (4), or (6) of subsection (a) of this section, unless, on request of the creditor to
> whom such debt is owed, and after notice and a hearing, the court determines such
> debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may
> be, of subsection (a) of this section.

Notably, §§ 523(a)(5) and (a)(15) are absent from § 523(c)(1).  Section 523(a)(5) provides that

"any debt for a domestic support obligation," is not dischargeable.  Section 523(a)(15) provides

that "any debt to a . . . former spouse . . . not of the kind described in paragraph (5) that is incurred

by the debtor in the course of a divorce . . . in connection with a . . . divorce decree or other order

of a court of record . . . ." is not dischargeable.  Because neither §§ 523(a)(5) nor (a)(15) are

enumerated in § 523(c)(1), a party need not obtain a determination of nondischargeability from the

bankruptcy court for debts falling under §§ 523(a)(5) or (a)(15).[59]

---

[57] *See, e.g.*, *Owen v. Miller (In re Miller)*, 333 B.R. 368, 370–71 (Bankr. N.D. Tex. 2005); *In re Walls*, 496 B.R. 818, 828 (Bankr. N.D. Miss. 2013).

[58] *La. Workforce Comm'n v. Campbell (In re Campbell)*, 2017 Bankr. LEXIS 1860, at *4 (Bankr. W.D. La. July 5, 2017) (quoting *Kontrick*, 540 U.S. at 447).  *See also Lab. Corp. of Am. v. Avalos (In re Avalos)*, 361 B.R. 129, 131 n.3 (Bankr. S.D. Tex. 2007) ("Because of the similarity between Rule 4004(a) and Rule 4007(c), the Court finds it is appropriate to look to cases construing Rule 4007(c) to determine the limits of Rule 4004(a). *See e.g. Kontrick v. Ryan*, 540 U.S. 443, 448 n.3, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004) ('Because of the practical identity of the time prescriptions for objections to the discharge of any debts under § 727(a) and for objections to the discharge of particular debts under § 523(c), courts have considered decisions construing Rule 4007(c) in determining whether the time limits delineated in Rules 4004(a) and (b) may be forfeited')").

[59] *In re Wise*, 2012 Bankr. LEXIS 5176, at *10–11 (Bankr. E.D. Tex. Nov. 5, 2012) (quoting COLLIER ON BANKRUPTCY ¶ 523.23 (16th ed. rev. 2009)).  *See also In re Rogowski*, 462 B.R. 435, 440 n.8 (Bankr. E.D.N.Y. 2011) ("No

In the underlying bankruptcy case Plaintiff filed the following general unsecured proofs of claim: (1) Claim No. 8-2 in the amount of $21,293.09 for "Child Support, Cause No. F-2230-05-2"; (2) Claim No. 9-2 in the amount $9,827.58 for "Order on Amended Motion for Enforcement of Child Support, Cash, Medical Support and Medical Educational Expenses"; (3) Claim No. 11-2 in the amount of $13,650.31 for "Order on Amended Motion for Enforcement of Child Support, Cash, Medical Support and Medical Educational Expenses".

Accordingly, Plaintiff's Claim 8-2 in the amount of $21,293.09, Claim 9-2 in the amount of $8,450.31, and Claim 11-2 in the amount of $13,650.31 are for domestic support obligations under §§ 507(a)(1)(A) or (a)(1)(B) and are not dischargeable pursuant to § 523(a)(5).

Plaintiff's Claim 7-7 is based on a Memorandum Opinion issued by the Thirteenth District Court of Appeals of Texas in case number 13-16-00349-CV entered on March 19, 2020, and a Judgment issued by the 357th District Court of Texas in case number 2012-DCL-4282-E entered on June 1, 2016, regarding the division of property.[60]  Unlike Plaintiff's Claims 8-2, 9-2, and 11-2, Plaintiff's Claim 7-7 is not a domestic support obligation, and thus does not fall under § 523(a)(5).  However, Claim 7-7 is for a debt owed by Defendant to his former spouse, Plaintiff, that was incurred by Defendant in the course of Defendant and Plaintiff's divorce in connection with an order of the 357th District Court of Texas, thus falling under § 523(a)(15).

Accordingly, Plaintiff's Claim 7-7 in the amount of $1,165,786.31 is not dischargeable pursuant to § 523(a)(15).

---

adversary proceeding need be filed to obtain a determination of nondischargeability as to debts that fall within the definitions of §§ 523(a)(5) and 523(a)(15)."); *Paulus v. Paulus (In re Paulus)*, 2011 Bankr. LEXIS 2484, at *2 (Bankr. N.D. Ohio 2011) ("BAPCPA . . . made property settlement debts encompassed under § 523(a)(15) unqualifiedly non-dischargeable."); *Loe, Warren, Rosenfield, Katcher, Hibbs, & Windsor, P.C. v. Brooks (In re Brooks)*, 371 B.R. 761, 768 (Bankr. N.D. Tex. 2007) ("Section 523(c) provides that the non-dischargeability of certain debts, including those covered by sections 523(a)(5) and 523(a)(15), need not be established prior to entry of a discharge order.").
[60] Claim No. 7-7.

Despite the nondischargeability of all four of Plaintiff's Claims pursuant to §§ 523(a)(5) or (a)(15), Plaintiff filed her Second Amended Complaint seeking entry of a judgment "(i) declaring all, or alternatively a portion, of the Defendant's debt to her to be non-dischargeable pursuant to" 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), (a)(4) and (a)(6); "(ii) awarding [Plaintiff] judgment against Defendant in an amount not less than one million, two hundred and fifty thousand dollars ($1,200,000.00) [sic] plus interest thereon as provided by law; plus attorney fees of fifty thousand dollars ($50,000); plus all costs and expense; and (iii) granting [Plaintiff] such other and further relief as the Court may deem just and proper."[61]  Because Plaintiff asserts four additional bases—§§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6)—for nondischargeability in her Second Amended Complaint, this Court will address each in turn.

Pursuant to Federal Rule of Bankruptcy Procedure 4005, "[a]t the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection."  A party objecting to the discharge must prove its claim of nondischargeability by a preponderance of the evidence.[62]  However, "exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start."[63]

### 1.  11 U.S.C. § 523(a)(2)(A)

Under § 523(a)(2)(A), a debt will not be discharged in bankruptcy if it is "for money, property, services, or an extension, renewal, or refinancing of credit," to the extent that it was "obtained by false pretenses, a false representation, or actual fraud."[64]  In *Husky International Electronics, Inc. v. Ritz*, the Supreme Court interpreted "actual fraud" to "encompass fraudulent conveyance

---

[61] ECF No. 96 at 19, ¶ 57.
[62] *In re Cowin*, 864 F.3d 344, 349 (5th Cir. 2017) (citing *Grogan v. Garner*, 498 U.S. 279, 287 (1991)); *see also In re Acosta*, 406 F.3d 367, 372 (5th Cir. 2005) (citing *In re Mercer*, 246 F.3d 391, 403 (5th Cir. 2001)).
[63] *In re Hudson*, 107 F.3d 355, 356 (5th Cir. 1997) ("[T]he Bankruptcy Code limits the opportunity for a new beginning to 'the honest but unfortunate debtor.'"); *In re Cowin*, 864 F.3d at 349 (quoting *Grogan*, 498 U.S. at 287).
[64] 11 U.S.C. § 523(a)(2)(A).

schemes, even when those schemes do not involve a false representation."[65]  However, the Supreme Court explained that while "the recipient of [] [a] transfer . . . can obtain assets by his or her participation in the fraud," it is also "of course true that the transferor does not 'obtai[n]' debts in a fraudulent conveyance."[66]

Here, Plaintiff alleges that pursuant to section 24.005 of the Texas  Uniform Fraudulent Transfer Act ("*TUFTA*"), Defendant fraudulently transferred $307,677 for mineral interest payments received by Defendant from Golden Eagle Resources, LLC ("*Mineral Interest Payments*") and a $75,339 withdrawal from a New York Life account ("*New York Life Withdrawal*") (plus the amounts received from his concealed weapons instruction and music businesses) to his attorney Joseph R. Preston; $30,000 worth of valuable jewelry (a ring and Rolex watch) to his niece; and his one-half interest in all of the furniture inherited from Loretta to his brother, Ronald M. Michelena.[67]  Plaintiff therefore claims that the value of the 357th District Court Judgment against Defendant equal to these transfers should be non-dischargeable.[68]

However, the transferor of an alleged fraudulent transfer cannot obtain debt as required by §523(a)(2)(A).[69]  In each of these alleged fraudulent transfers, Defendant was the transferor, and either his attorney, his niece, or his brother were the recipient transferees.  Because Defendant was

---

[65] 578 U.S. 355, 366 (2016).

[66] *Id.* at 365.

[67] ECF No. 96 at 7–10, ¶¶ 15–24.  Although Plaintiff's Second Amended Complaint did not state how much the furniture was worth, Plaintiff's Post-Trial Brief asks this Court to find nondischargeable $100,000 for the ring, the Rolex watch, and the furniture.  ECF No. 124 at 24–25, ¶ 78.

[68] ECF No. 96 at 10, ¶ 24.

[69] *See In re Green*, 968 F.3d 516, 522 n.13 (5th Cir. 2020) (explaining in dictum that where the debtor was the "transferor, not the recipient," then "Section 523(a)(2)(A) is [] inapplicable"); *see also In re Zolnier*, 2021 U.S. App. LEXIS 35857, at *10 (5th. Cir. 2021) (explaining in dictum that even if the debtors "engaged in a fraudulent transfer scheme," the debtors were the transferors and not the recipients, such that § 523(a)(2)(A) would not apply); *see also In re Aykiran*, 2022 Bankr. LEXIS 198, at *10 (B.A.P. 9th 2022) (explaining that where the debtor "was the transferor, but not the transferee, of the alleged fraudulent transfers," the debtor "did not obtain . . . debt by fraud as required by § 523(a)(2)(A)"); *see also In re Wisner*, 608 B.R. 589, 598 (Bankr. N.D. Ga. 2019) (granting summary judgment in favor of the defendant as a matter of law on the plaintiff's § 523(a)(2)(A) nondischargeability claim where the "undisputed material facts with respect to the $630,000 transfer . . . demonstrate that Defendant did not obtain any assets or incur any debt as a result of the transfer").

not the transferee, he did not "obtain" debts as a result of these alleged fraudulent transfers, and thus, §523(a)(2)(A) does not apply to the facts of this case.

Defendant's Post-Trial Brief raises an affirmative defense, arguing that Plaintiff is barred by section 24.010 of TUFTA—a statute of repose—from bringing her fraudulent transfer claims.[70] However, because Plaintiff cannot show that Defendant "obtained" debts as a result of the alleged fraudulent transfers, Defendant's affirmative defense is rendered moot.

Accordingly, Plaintiff's request that this Court find $407,677 of the 357th District Court Judgment nondischargeable pursuant to § 523(a)(2)(A) is denied.

### 2. 11 U.S.C. § 523(a)(2)(B)

Under § 523(a)(2)(B), a debt will not be discharged in bankruptcy if it is obtained by (i) use of a statement in writing; (ii) that is materially false; (iii) respecting the debtor's or an insider's financial condition; (iv) on which the creditor to whom the debtor is liable for such credit reasonably relied; and (v) that the debtor caused to be made or published with the intent to deceive.[71] Plaintiff here complains that Defendant's Sworn Inventories failed to include the A.G. Edwards Account, the Compass CD, and the Settlement.[72] Upon the revelation that Debtor excluded these assets from his Sworn Inventories, the 357th District Court awarded Plaintiff a judgment for the value of the two accounts and the Settlement, totaling $314,916.58.[73] Plaintiff asserts that "[b]y signing sworn inventories during the divorce proceeding between Defendant and [Plaintiff] Monica Michelena . . . Defendant obtained money and property by the use of a statement in writing that was materially false in representing Defendant's financial condition . . . ."[74]

---

[70] See ECF No. 123 at 15–18, ¶¶ 50–59.
[71] 11 U.S.C. § 523(a)(2)(B); see In re Orsini, 289 F. App'x 714, 717 (5th Cir. 2008).
[72] ECF No. 96 at 4, 16, ¶¶ 12, 45; ECF No. 124 at 13, ¶ 41.
[73] ECF No. 75-4 at 3–4.
[74] ECF No. 96 at 16, ¶ 46.

The Supreme Court has described § 523(a)(2)(A) and § 523(a)(2)(B) as:

> two close statutory companions barring discharge. One applies expressly when *the debt follows a transfer of value or extension of credit* induced by falsity or fraud (not going to financial condition), the other when *the debt follows a transfer or extension* induced by a materially false and intentionally deceptive written statement of financial condition upon which the creditor reasonably relied.[75]

Here, the $314,916.58 debt owed by Defendant to Plaintiff does not result from either a transfer of value or an extension of credit by Plaintiff. Rather, it is a debt resulting from the 357th District Court Judgment awarding Plaintiff the value of the A.G. Edwards Account, the Compass CD, and the Settlement, for Defendant's failure to disclose those assets. As such, § 523(a)(2)(B) does not render $314,916.58 of Claim 7-7 non-dischargeable.

Accordingly, Plaintiff's request that this Court find $314,916.58 of Claim 7-7 nondischargeable pursuant to § 523(a)(2)(B) is denied.

### 3.   11 U.S.C. § 523(a)(4)

Under § 523(a)(4), a debt will not be discharged in bankruptcy if it is "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[76] The concept of fiduciary as that term is used in § 523(a)(4) "is narrower than it is under the general common law."[77] Under § 523(a)(4), the term "fiduciary" is "limited to instances involving express or technical trusts," so that consequently, "[t]he purported trustee's duties must . . . arise independent of any contractual obligation."[78] However, because "[s]tatutory trusts . . . can satisfy the dictates of § 523(a)(4)," state law may in some instances create a fiduciary relationship, a breach of which results in non-dischargeability under § 523(a)(4).[79]

---

[75] *Field v. Mans*, 516 U.S. 59, 66 (1995) (emphasis added).
[76] 11 U.S.C. § 523(a)(4).
[77] *In re Tran*, 151 F.3d 339, 342 (5th Cir. 1998).
[78] *Id.*
[79] *See In re Gupta*, 394 F.3d 347, 350 (5th Cir. 2004) ("This court has, on the other hand, not hesitated to conclude that debts arising from misappropriation by persons serving in a traditional, pre-existing fiduciary capacity, as understood by state law principles, are non-dischargeable.").

While debts for embezzlement or larceny "need not involve a fiduciary,"[80] determining whether a debtor committed fraud or defalcation while acting in a fiduciary capacity under § 523(a)(4) is a two-step process.[81] "First, it must be shown that the requisite fiduciary relationship existed prior to the particular transaction from which the debt arose."[82] Second, some type of fraud or defalcation must have occurred during the fiduciary relationship."[83] Therefore, this Court will first determine whether Defendant owed Plaintiff a fiduciary duty.

### a.  Fiduciary Relationship

Plaintiff's Second Amended Complaint alleges that Defendant's status as Plaintiff's husband placed upon Defendant a fiduciary duty to: (i) "disclose to [Plaintiff] all of his assets both before and during their divorce proceedings"; (ii) "not to dispose of the marital assets without her consent or a court order authorizing the disposition of said assets"; and (iii) "not to convert to his own personal use (to the exclusion of [Plaintiff]) assets which rightfully belong to [Plaintiff]."[84] Because of these alleged fiduciary breaches, Plaintiff argues that "the resulting debts as found by the Court are non-dischargeable" under § 523(a)(4).[85]

However, as stated, "to be a fiduciary for purposes of dischargeability, the debtor must be a trustee under either an express or technical trust."[86] The parties therefore must have either intended to create a trust or one must arise by statute.[87] Here, Plaintiff failed to demonstrate the requisite existence of an express or technical trust relationship between her and her ex-husband—either before or during their divorce proceedings.

---

[80] *In re Adams*, 348 B.R. 368, 373 (Bankr. E.D. La. 2005).

[81] *In re Humphries*, 516 B.R. 856, 866 (N.D. Miss. 2014).

[82] *Id.* (citing *In re Cross*, 666 F.2d 873, 879 (5th Cir. Unit B 1982); *In re Menendez*, 107 B.R. 789, 793 (Bankr. S.D. Fla.1989); *In re Valdes*, 98 B.R. 78, 80 (Bankr. M.D. Fla. 1989)).

[83] *In re Humphries*, 516 B.R. at 866 (citing *In re Chavez*, 140 B.R. 413, 422 (Bankr. W.D. Tex. 1992)).

[84] ECF No. 96 at 17, ¶ 48.

[85] *Id.*

[86] *In re Eichelberger,* 100 B.R. 861, 863 (Bankr. S.D. Tex. 1989).

[87] *See id.* at 864.

First, Plaintiff alleges that under § 523(a)(4), Defendant breached his fiduciary duty to her during their marriage.  A trust stemming from a husband-wife relationship is "constructive in nature."[88]  Because § 523(a)(4) requires that a debtor be a trustee under an express or technical trust to constitute a "fiduciary" for nondischargeability purposes, a trust relationship resulting from a constructive trust will not satisfy the narrow definition of "fiduciary" under § 523(a)(4).[89]  Therefore, Plaintiff cannot demonstrate that Defendant's status as her husband consequently placed upon Defendant a fiduciary duty during their marriage for nondischargeability purposes.

Second, Plaintiff alleges that under § 523(a)(4), Defendant breached his fiduciary duty to Plaintiff during their divorce proceedings.  However, a divorce decree does not "in of itself create fiduciary capacity of the type contemplated under § 523(a)(4)."[90]  Again, a trust relationship must instead be express or technical or originate from state law to create the necessary fiduciary relationship for § 523(a)(4) purposes.[91]  Plaintiff failed to show that either the Divorce Decree, the 357th District Court Judgment, or Texas law creates the requisite trust relationship.[92]  Therefore, this Court  finds that Defendant was not acting in a fiduciary capacity during the divorce proceedings.

---

[88] *In re Atherton*, 1999 U.S. App. LEXIS 39789, *6 (5th Cir. 1999).

[89] *See id.*, at *5–6 (affirming a bankruptcy court's decision to discharge a debtor's indebtedness owed pursuant to a divorce decree despite former wife's § 523(a)(4) claim, explaining that a "fiduciary-type relationship stemming from a constructive trust fails to satisfy § 523(a)(4)," and that according to the Texas Court of Civil Appeals "any trust resulting from [] [a husband-wife] relationship" is "constructive in nature").

[90] *In re Humphries*, 516 B.R. 856, 868 (Bankr. N.D. Miss. 2014); *see also In re Sirmons* 2006 Bankr. LEXIS 683, at *4 (Bankr. N.D. Tex. 2006) (concluding that ex-wife plaintiff's § 523(a)(4) non-dischargeability claim failed, where ex-wife alleged ex-husband violated a fiduciary relationship by failing to pay her the remaining debt on her reimbursement claim pursuant to a divorce decree, as no evidence of a trust relationship existed between her and ex-husband); *see also Boyd v. Boyd*, 67 S.W.3d 398, 405 (Tex. App.—Fort Worth 2002, no pet.) ("The fiduciary duty arising from the marriage relationship does not continue when a husband and wife each hire independent professional counsel to represent them in a contested divorce proceeding.").

[91] *In re Tran*, 151 F.3d at 342; *In re Shcolnik*, 670 F.3d 624, 628 (5th Cir. 2012) (citing *In re Gupta*, 394 F.3d at 350).

[92] *In re Jacobson* 433 B.R. 183, 191–94 (holding that a plaintiff ex-wife could not prevent discharge through a showing of defalcation under § 523(a)(4) where TEX. FAM. CODE § 9.011 created a "constructive trust," and plaintiff could not demonstrate that former husband-debtor held an express or technical trust over assets which belonged to her pursuant to a divorce decree); *see also In re Atherton*, 1999 U.S. App. LEXIS 39789, at *7 (holding that "Texas law impose[ed] no 'trust-like duties'" on the former husband-debtor "that are essential to a finding of non-dischargeability under § 523(a)(4)").

Accordingly, Plaintiff's request that this Court find Claim 7-7 nondischargeable pursuant to §523(a)(4) for fraud or defalcation[93] is denied.

### b. Larceny[94]

Under federal common law, larceny is the "felonious taking of another's personal property with intent to convert it or deprive the owner of same."[95]  The elements of larceny are: (1) the fraudulent and wrongful taking away of the property of another with (2) the intent to convert it to the taker's use and with intent to permanently deprive that owner of such property.[96]  Larceny necessarily requires an unlawful taking.[97]

Plaintiff alleges that Defendant committed larceny "by intentionally and fraudulently hiding from Plaintiff assets that rightfully belonged to her  and by intentionally and fraudulently taking and keeping for his own use assets that rightfully belonged to [Plaintiff]."[98]  The "assets" include: (1) the 357th District Court Judgment for $314,916.58 for Defendant's failure to disclose the A.G. Edwards Account, the Compass CD, and the Settlement in his Sworn Inventories;[99] (2) $307,677 for the Mineral Interest Payments and the New York Life Withdrawal in Defendant's name, plus unspecified amounts Defendant received from his concealed weapons instruction and music businesses;[100] (3) a ring valued at $20,000, a Rolex watch valued at $10,000, and furniture bequeathed to Defendant by Loretta's will;[101] (4) the 357th District Court Judgment for $197,853.98 for

---

[93] *See In re Sirmons*, 2006 Bankr. LEXIS at 683, at *4.
[94] Plaintiff pled only fraud or defalcation while acting in a fiduciary capacity and larceny under § 523(a)(4).  Plaintiff did not plead embezzlement.  ECF No. 96 at 17–18, ¶¶ 47–52.
[95] *Gomez v. Saenz (In re Saenz)*, 2014 Bankr. LEXIS 3390, at *12 (Bankr. S.D. Tex. Aug. 8, 2014) (citations omitted).
[96] *Nibbi v. Kilroy (In re Kilroy)*, 357 B.R. 411, 431 (Bankr. S.D. Tex. 2006) (citations omitted).
[97] *S.P. Auto Sales, Inc. v. Benites (In re Benites)*, 2012 Bankr. LEXIS 4735, at *28 (Bankr. N.D. Tex. Oct. 9, 2012) (comparing embezzlement with larceny, stating that "[i]n other words, there is no ***unlawful taking*** at the outset [with embezzlement], as with larceny.") (emphasis in original).
[98] *Id.* at 18, ¶ 52.
[99] ECF No. 96 at 3–6, ¶¶ 9–14.
[100] *Id.* at 7, ¶ 16.
[101] *Id.* at 8–10, ¶¶ 19–24.

equally divided community property;[102] and (5) $249,183.11 for funds in a Texas State Bank account ("*TSB Account*") in Defendant's name.[103]

Judgments in Texas are not self-executing.[104]  In general, judgments "shall be enforced by execution or other appropriate process."[105]  There are four  primary ways to enforce a judgment: (1) filing an abstract of judgment;[106] (2) obtaining a writ of execution;[107] (3) obtaining a writ of garnishment; and (4) seeking a turnover order.[108]  Additionally, if a judgment is for the conveyance of real property or the delivery of personal property, then the judgment may pass title to the property without additional action by the party against whom the judgment is rendered.[109]

Plaintiff asks this Court to find Claim 7-7 nondischargeable based on Plaintiff's allegation that Defendant committed larceny of the above identified "assets."  It is Plaintiff's burden to prove by a preponderance of the evidence that Defendant wrongfully took the complained about assets from another.[110]  First, as defined by Black's Law Dictionary, a judgment is "[a] court's final determination of the rights and obligations of the parties in a case."[111]  By that definition, there is nothing that one can "unlawfully take," as is required by larceny.  The 357th District Court Judgment was a money judgment that used the phrase "for let execution issue" to give Plaintiff the

---

[102] *Id.* at 10–11, ¶ 25.

[103] *Id.* at 12, ¶¶ 30–31.

[104] *Baytown State Bank v. Nimmons*, 904 S.W.2d 902, 906 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

[105] TEX. R. CIV. P. 621.

[106] TEX. PROP. CODE § 52.002.

[107] TEX. R. CIV. P. 658 ("Either at the commencement of a suit or at any time during its progress, the plaintiff may file an application for writ of garnishment.").

[108] TEX. CIV. PRAC. & REM. CODE § 31.002 ("A judgment creditor is entitled to aid from a court of appropriate jurisdiction . . . to reach property or obtain satisfaction on the judgment if the judgment debtor owns property, including present or future property rights, that is not exempt from attachment, execution, or seizure for satisfaction of liabilities."  In aiding the judgment creditor, the court may (i) order the judgment debtor to turn over nonexempt property to a designated sheriff or constable for execution; (ii) otherwise apply the property to the satisfaction of the judgment; or (iii) appoint a receiver to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor.).

[109] *Id.* § 31.001 ("A judgment for the conveyance of real property or the delivery of personal property may pass title to the property without additional action by the party against whom the judgment is rendered.").

[110] *In re Kilroy*, 357 B.R. at 431.

[111] *Judgment*, BLACK'S LAW DICTIONARY (11th ed. 2019).

necessary writ to enforce the Judgment.[112]  It did not, however, order Defendant to turn over the funds in the A.G. Edwards Account, the Compass CD, the Settlement, the equally divided community property, or the funds in TSB Account.[113]

Second, Plaintiff has not demonstrated that any of the complained of assets belonged to her pursuant to the 357th District Court Judgment or an attempted enforcement thereof.  Here, neither the 357th District Court Judgement nor the Court of Appeals Order awarded any of the complained of property to Plaintiff.[114]  Therefore, title to that property did not pass automatically to Plaintiff pursuant to a judgment.[115]

Plaintiff offered evidence of two writs of execution, but those writs were specific to the Marshall Hutts property.[116]  Plaintiff has not made any allegations related to the Marshall Hutts property in this proceeding.  Plaintiff also offered evidence of a writ of garnishment to garnishees BBVA Compass Bank and Wells Fargo Advisors.[117]  As stipulated, BBVA Compass Bank held $12,987.95 because of the garnishment.[118]  No other writs of execution or writs of garnishment were offered into evidence.  Plaintiff offered no evidence that she filed an abstract of judgment to create a lien on Defendant's nonexempt property or that she asked the court to order Defendant to turn over the property or appoint a receiver to collect on the 357th District Court Judgment.[119]  Lastly, Plaintiff neither offered evidence nor elicited testimony at trial that the complained of

---

[112] ECF No. 75-4.

[113] *Id.*

[114] ECF Nos. 75-4, 75-10.

[115] Tex. Civ. Prac. & Rem. Code § 31.001.

[116] ECF Nos. 81-4, 81-5.

[117] ECF No. 81-6.

[118] *Id.*

[119] *See Countrywide Home Loans, Inc. v. Cowin (In re Cowin)*, 492 B.R. 858, 907 (Bankr. S.D. Tex. 2013) (finding that where plaintiffs had liens on excess proceeds resulting from the foreclosure sale of certain property and debtor and his co-conspirators diverted those funds to themselves, debtor and his co-conspirators took away property of the plaintiffs).

property belonged to her or anyone other than Defendant, as was required to satisfy the wrongful

taking element of larceny.[120]

Third, not only did Plaintiff fail to meet her evidentiary burden, her Second Amended

Complaint affirmatively pled that the Mineral Interest Payments, New York Life Withdrawal,

profits from Defendant's businesses, ring, Rolex watch, and furniture were lawfully owned by or

bequeathed to Defendant.[121]  That admission directly contradicts her allegation that Defendant

"intentionally and fraudulently t[ook] and ke[pt] for his own use assets that rightfully belonged to

[her]."[122]  Absent any evidence that the complained of property belonged to Plaintiff or anyone

other than Defendant, Plaintiff has not demonstrated by a preponderance of evidence that Defend-

ant unlawfully took the property.

Accordingly, Plaintiff's request that this Court find Claim 7-7 nondischargeable pursuant

to § 523(a)(4) for larceny is denied.

### 4.  11 U.S.C. § 523(a)(6)

Under § 523(a)(6) a debt will not be discharged in bankruptcy if it is "for willful and ma-

licious injury by the debtor to another entity or to the property of another entity[.]"  Willful and

malicious injury results from an act done with the actual intent to cause injury.[123]  An injury is

"willful and malicious" where there is either an objective substantial certainty of harm or a sub-

jective motive to cause harm.[124]

Plaintiff alleges that Defendant "willfully and maliciously failed to disclose marital prop-

erty to [Plaintiff], failed to turn over marital property to [Plaintiff], fraudulently transferred

---

[120] *In re Kilroy*, 357 B.R. at 431.
[121] ECF No. 96 at 7–8, ¶¶ 16(a)–(e), 19.
[122] *Id.* at 18, ¶ 52.
[123] *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).
[124] *Anderson v. Wendt (In re Wendt)*, 381 B.R. 217, 224 (Bankr. S.D. Tex. 2007) (citing *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 603 (5th Cir. 1998)).

property to keep it from [Plaintiff] and converted [Plaintiff's] property for his own personal use . . . ."[125]  In her Post-Trial Brief, Plaintiff requests that this Court find nondischargeable (1) $274,866.58 for the A.G. Edwards Account and the Compass CD;[126] (2) $236,194.28 for Plaintiff's share of the TSB Account;[127] and (3) $197,853.98 of the 357th District Court Judgment for the division of community property.[128]  The Court addresses each request in turn.

### a.  $274,866.58 for the A.G. Edwards Account and the Compass CD

#### i.  Compass CD ($157,141.71)

Plaintiff asserts that when her marriage with Defendant was headed toward divorce, Defendant transferred $150,000 of community funds from a joint bank account owned by Defendant and Loretta ("*Joint Account*") to open the Compass CD with the intent to deprive Plaintiff of those funds.[129]  Citing the Texas Family Code, Plaintiff insists that the $150,000 was community property because it was possessed by Defendant during their marriage and Defendant did not provide clear and convincing evidence that the money was the sole property of Loretta.[130]

While it may have been Defendant's burden during the divorce proceedings to overcome the community property presumption by clear and convincing evidence, it is Plaintiff's burden in this proceeding to prove by a preponderance of the evidence that the debt is nondischargeable for willful and malicious injury to Plaintiff.[131]  Therefore, it is Plaintiff's burden in this proceeding to demonstrate that Defendant owned the $150,000 that came from the Joint Account.

---

[125] ECF No. 96 at 19, ¶ 57.
[126] ECF No. 124 at 12, ¶ 39.
[127] *Id.* at 21.
[128] *Id.* at 24.
[129] *See id.* at 6–7, 12, ¶¶ 18–19, 23, 39.
[130] *Id.* at 7–8, ¶ 25 (citing TEX. FAM. CODE § 3.003(a)).
[131] *In re Cowin*, 864 F.3d at 349 (citing *Grogan*, 498 U.S. at 287).

Plaintiff cites the Code of Federal Regulations ("*CFR*") regarding "Joint Ownership Accounts" to support her position that Defendant was a co-owner of the joint bank account.[132] Section 330.9(e) of the CFR states that, "[t]he interests of co-owners of qualifying joint accounts, held as tenants in common, shall be deemed equal, unless otherwise stated in the depository institution's deposit account records."[133] However, the purpose of CFR § 330 "is to clarify the rules and define the terms necessary to afford deposit insurance coverage under the [Federal Deposit Insurance] Act and provide rules for the recognition of deposit ownership in various circumstances."[134] It does not determine ownership of funds under state law.

Texas Estates Code section 113.102 provides that "[d]uring the lifetime of all parties to a joint account, the account belongs to the parties in proportion to the net contributions by each party to the sums on deposit unless there is clear and convincing evidence of a different intent." Although a party to a joint account is entitled to lawfully draw money from the account that authority alone does not establish the party's ownership of the funds.[135] Defendant asserts that he was merely a signatory on the Joint Account and that he never deposited money into the Compass CD.[136]

The record demonstrates that $150,000 was transferred from the Joint Account to open the Compass CD.[137] Additionally a series of social security checks, which Defendant testified were Loretta's, were deposited into the Joint Account.[138] Defendant testified that Loretta was the only one in Defendant's family receiving social security checks.[139] Plaintiff did not offer any evidence

---

[132] ECF No. 124 at 10–11, ¶¶ 31–35 (citing 12. C.F.R. § 330.9).
[133] 12 C.F.R. § 330.9(e).
[134] *Id.* § 330.2.
[135] *Hicks v. State*, 419 S.W.3d 555, 559 (Tex. App.—Amarillo 2013, pet. ref'd).
[136] ECF No. 123 at 12–13, ¶ 44.
[137] ECF Nos. 80-2 at 3; 104-4 at 38–39.
[138] ECF No. 72-1 at 185–213.
[139] ECF No. 119 at 1:15:40–1:16:15.

that Defendant deposited money into the Joint Account.  Nor did Plaintiff provide clear and con-

vincing evidence to defeat the presumption that Defendant and Loretta intended their share of the

funds to be in proportion to their respective net contributions.[140]  Most importantly, Plaintiff of-

fered no evidence demonstrating that Defendant, rather than Loretta, authorized transfer of the

$150,000 to the Compass CD.

Absent any evidence that Defendant owned of at least some portion of the $150,000 or that

Defendant authorized the transfer of those funds to the Compass CD, this Court declines Plaintiff's

invitation to conclude that Defendant acted with actual intent to cause injury to Plaintiff as

§ 523(a)(6) requires.

Accordingly, Plaintiff's request that this Court find $157,141.71 of Claim 7-7 for the Com-

pass CD nondischargeable pursuant to § 523(a)(6) is denied.

### ii.  A.G. Edwards Account ($117,724.87)

Plaintiff's theory that the $117,724.87 awarded in the 357th District Court Judgment for

the A.G. Edwards Account is twofold.  First, Plaintiff makes the conclusional allegation that "De-

fendant willfully and maliciously failed to disclose marital property to [Plaintiff]."[141]  Second,

Plaintiff contends that the account was opened while Plaintiff and Defendant's marriage was fall-

ing apart.[142]  Plaintiff generally alleges that Defendant intentionally deprived her of community

funds by transferring them to Loretta.[143]

Defendant admits that he did not disclose the A.G. Edwards Account in the divorce pro-

ceeding and explained that he did not do so because he believed it to be Loretta's account where

---

[140] TEX. EST. CODE § 113.102.
[141] ECF No. 96 at 19, ¶ 57.
[142] ECF No. 124 at 7, ¶ 23.
[143] *Id.* at 12, ¶ 39.

she deposited and withdrew money.[144]  Absent evidence that Defendant deposited money into the A.G. Edwards Account and in light of section 113.102 of the Texas Estates Code as explained above, this Court finds that Defendant did not act with intent to injure Plaintiff by failing to disclose the account in his Sworn Inventories.  Additionally, Plaintiff points to no evidence demonstrating that community funds were transferred to Loretta or the A.G. Edwards Account.[145]  Absent such evidence, Plaintiff has not proved by a preponderance of the evidence that Defendant transferred community property with the intent to injure Plaintiff by depriving her of such property.

Accordingly, Plaintiff's request that this Court find $117,724.87 of Claim 7-7 for the A.G. Edwards Account nondischargeable pursuant to § 523(a)(6) is denied.

### b.  $240,691[146] for Plaintiff's share of the Texas State Bank Account

Plaintiff asserts that "Defendant intentionally, willfully and/or *recklessly* converted $240,691 of [Plaintiff's] share of the [Texas State Bank Account 602] and therefore $240,691 of [Plaintiff's] claim is non-dischargeable under 11 U.S.C. § 523(a)(6)."[147]  Conduct that is merely reckless does not constitute willful and malicious conduct and therefore does not fall within the § 523(a)(6) exception to discharge.[148]  Plaintiff must prove that Defendant intentionally and willfully converted Plaintiff's share of the funds, mere recklessness will not suffice.

According to Plaintiff's Post-Trial Brief[149] and the Divorce Decree,[150] Defendant was awarded the TSB Account as his separate property.  The Court of Appeals Decision reversed that

---

[144] ECF No. 123 at 12–13, ¶ 44.
[145] *Id.*
[146] The relevant heading in Plaintiff's Post-Trial Brief seeks nondischargeability of $236,194.28, but in the supporting paragraphs seeks nondischargeability of $240,691.  ECF No. 124 at 22–23.  The Court here uses $240,691 as the correct amount because that represents the amount awarded by the 357th District Court Judgment, $249,183.11, minus the $8,492 that Plaintiff asserts was in the account at the end of the new trial.  *Id.* at 23.
[147] ECF No. 124 at 21.
[148] *See Kawaauhau*, 523 U.S. at 64.
[149] ECF No. 124 at 2, ¶ 4.
[150] ECF No. 75-2 at 39–40 ("IT IS ORDERED AND DECREED that the husband, ROBERT MICHELENA, is awarded the following as his sole and separate property, and the wife is divested of all right, title, interest, and claim

finding and remanded the case for a new trial.[151]  At the end of the new trial, the 357th District

Court found that the TSB Account was community property and awarded Plaintiff $249,183.11,

representing one-half of the value of the account at the time of the divorce.[152]  Plaintiff asserts that

by the time of trial, Defendant spent or transferred all but $8,492 out of that account.[153]

Federal law governs nondischargeability, but courts look to state law to determine whether

conversion occurred.[154]  To establish conversion under Texas law, a plaintiff must prove that: (i)

the plaintiff owned, had legal possession of, or was entitled to possession of the property; (ii) the

defendant assumed and exercised dominion and control over the property in an unlawful and un-

authorized manner, to the exclusion of and inconsistent with the plaintiff's rights; (iii) the defend-

ant refused the plaintiff's demand for the return of the property.[155]  Not every conversion satisfies

the "willful and malicious" requirement of § 523(a)(6), however, as no intent to convert is re-

quired.  In other words, conversion may be innocent or technical, without willfulness or malice.[156]

On July 23, 2009, Defendant was awarded the TSB Account as his separate property by

the Divorce Decree.[157]  On June 15, 2012, the Court of Appeals Decision reversed the Divorce

Decree's award of the TSB Account to Defendant.[158]  The Court of Appeals Decision stated that

because funds were commingled, there was a fact issue as to whether the TSB Account retained

its separate character and the trial court erred in granting Defendant a directed verdict and not

---

in and to that property: . . . . All sums of case in the possession of the husband or subject to his sole control, including
funds . . . in banks . . . . Texas State Bank, Robert Michelena, Account Number ending in 602[.]").
[151] ECF No. 124 at 2, ¶ 4.
[152] *Id.* at 3, ¶ 8.
[153] *Id.* (citing ECF No. 110 at 2:08:12–2:08:52).
[154] *Trustmark Nat'l Bank v. Tegeler (In re Tegeler)*, 586 B.R. 598, 692 (Bankr. S.D. Tex. 2018) (quoting *State Farm
Mut. Auto Ins. Co. v. Rodriguez (In re Rodriguez)*, 568 B.R. 328 (Bankr. S.D. Cal. 2017)).
[155] *Huffmeyer v. Mann*, 49 S.W.3d 554, 558 (Tex. App.—Corpus Christi 1979, no writ).
[156] *In re Tegeler*, 586 B.R. at 692.
[157] ECF No. 75-2 at 39–40.
[158] ECF No. 75-3 at 42.

submitting the account to the jury for characterization.[159]  The Court of Appeals remanded the case back to the trial court.[160]  On June 8, 2016, the 357th District Court found that the TSB Account was community property and awarded Plaintiff 50% of the account balance at the time of divorce.[161]  The Court of Appeals Order affirmed that award.[162]

Plaintiff complains that Defendant depleted nearly all the funds in the TSB Account between the time the divorce petition was filed and when the new trial was held in the 357th District Court, committing conversion and theft of the funds in the TSB Account.[163]  Because the Divorce Decree originally awarded the TSB Account to Defendant, Plaintiff did not own or have legal possession of the TSB Account and she was not entitled to possession of it.  Nor did Plaintiff produce evidence that she sought or was awarded a temporary injunction prohibiting Defendant from withdrawing or spending money from the TSB Account while the appeal of the Divorce Decree was pending.[164]

The Court of Appeals Decision did not give Plaintiff rights to the TSB Account either.  It merely found that there was a fact issue as to whether commingling of funds changed the nature of the TSB Account such that it should be considered community property.[165]  Again, Plaintiff did not offer evidence that she sought or was awarded a temporary injunction, prohibiting Defendant from spending the money in the TSB Account while awaiting a new trial.  Thus, Plaintiff had no rights to the property during the timeframe in which she alleges Defendant depleted the funds in

---

[159] *Id.* at 25.

[160] *Id.*

[161] ECF No. 75-4 at 2–3.

[162] ECF No. 76-1 at 9.

[163] ECF No. 124 at 21–22, ¶¶ 67–68.

[164] Even if Plaintiff had sought a temporary injunction "it is contrary to the policy of the law to permit a creditor who has no judgment to go into a court of equity and restrain a debtor from selling, removing, or disposing of his property at his pleasure, pending a common law action." *Frederick Leyland & Co. v. Webster Bros. & Co.*, 283 S.W. 332 (Tex. Civ. App.—Dallas), writ dism'd w.o.j., 283 S.W. 1071 (1926).  Here, Plaintiff had no judgment with respect to the TSB Account when the Divorce Decree was appealed.

[165] ECF No. 75-3 at 25.

the account and therefore, Defendant's depletion was not to the exclusion of or inconsistent with Plaintiff's rights.[166]   Therefore, Plaintiff has not proved that Defendant is culpable of converting the funds in the TSB Account.

Accordingly, Plaintiff's request that this Court find $240,691 of Claim 7-7 for Plaintiff's share of the Texas State Bank Account nondischargeable pursuant to § 523(a)(6) is denied.

### c. $197,853.98 of the 357th District Court Judgement for the division of community personal property

Plaintiff asserts that Defendant willfully, maliciously, and/or *recklessly* converted Plaintiff's share of the community property awarded to her and therefore $197,853.98 of Plaintiff's claim is nondischargeable under § 523(a)(6).[167]   Again, the Court notes that reckless conduct alone does not satisfy § 523(a)(6) as discussed above.[168]

According to Plaintiff's Post-Trial Brief, Defendant was awarded 86% of the community personal property in the Divorce Decree.[169]   On appeal, the Court of Appeals found that the trial court abused its discretion in awarding Defendant 86% of the community personal property and ordered a new trial.[170]   Plaintiff asserts that because Defendant kept nearly all of the community personal property, including property that belonged to her, "on the retrial of the case, the 357th District Court rendered a decision awarding [Plaintiff] a monetary judgment on $197,000."[171] Plaintiff concludes that "[i]n no world could Defendant have believed that eighty percent of the community property belonged to him."[172]

---

[166] *Huffmeyer*, 49 S.W.3d at 558.
[167] ECF No. 124 at 24.
[168] *See Kawaauhau*, 523 U.S. at 64.
[169] ECF No. 124 at 24, ¶ 75.
[170] *Id.*
[171] ECF No. 124 at 24, ¶ 75.
[172] *Id.* ¶ 76.

The Divorce Decree awarded: (i) Plaintiff the property listed in Exhibit A, with the exception of a few items, and ordered Defendant to deliver those items to Plaintiff by August 31, 2009;[173] (ii) Defendant the property listed in Exhibit B;[174] and (iii) Plaintiff $25,000 "as part of her Community Property settlements listed in Exhibit C,"[175] awarding Defendant the property in Exhibit C "as his sole and separate property," divesting Plaintiff "of all right, title, interest, and claim in and to that property."[176]  On appeal, the Court of Appeals Decision stated:

> [Defendant] received $170,000 worth of community personal property to keep and $242,707.95 worth of the personal property indicated to be sold, for a total of approximately $413,000. By contrast, [Plaintiff] received approximately $42,000 worth of community personal property to keep and a $25,000 judgment as her portion of the community property that was indicated to be sold, for a total of approximately $67,000. In short, [Defendant] received approximately eighty-six percent of the community personal property, and [Plaintiff] received only fourteen percent.[177]

The Court of Appeals held that "the trial court abused its discretion in . . . generally dividing the community estate in an inequitable manner" and remanded the case to the trial court for a new trial.[178]

At the new trial, the 357th District Court found that the total value of the community property to be divided was $479,707.95, as of the date of divorce.[179]  The 357th District Court found that "a Judgment against [Defendant] in the amount of $197,853.98 is awarded to [Plaintiff] as her share [sic] the Exhibit C in the Decree of Divorce, 'Community Property,' which the Court of Appeals ordered to be divided equally plus pre-judgment interest at 5%, $65,400.23, for a total

---

[173] ECF No. 75-2 at 38, 45, ¶¶ W-3, 1.
[174] *Id.* at 39, ¶ H-3.
[175] *Id.* at 38, ¶ W-7.
[176] *Id.* at 40, ¶ H-6.
[177] ECF No. 75-3 at 35.
[178] *Id.* at 42.
[179] ECF No. 74-10 at 9, ¶ 18.  The $479,707.95 was derived by adding up the amounts specified in the Court of Appeals Decision ($170,000 + $242,707.95 + $42,000 + $25,000 = $479,707.95).  ECF NO. 75-3 at 35.

judgment of $263,254.21, for which let execution issue."[180]  It was only the community property

in Exhibit C to the Divorce Decree that the 357th District Court Judgment said it addressed.[181]

However, on appeal, the Court of Appeals Order concluded that Plaintiff was not entitled to pre-

judgment interest, affirmed the $197,853.98 award, and explained that:

> From the language in its most recent order and its related findings of fact, it seems that the trial court intended to divide the community property assets equally.  It appears though, that the inclusion of the phrase "Exhibit C" led to confusion about the community property award.  Accordingly, we sustain [Defendant's] fifth issue in part and reform this part of the judgment to provide that, "A Judgment against [Defendant] in the amount of $197,853.98 is awarded to [Plaintiff] as her share of the Community Property, which the Court of Appeals ordered to be divided equally, for which let execution issue."[182]

> Plaintiff's Second Amended Complaint asserts that:

> Defendant has fraudulently deprived [Plaintiff] of her share of the Community property described in paragraph 25, by repeatedly and fraudulently declaring that [Plaintiff] had already received her share of the divided community property and by repeatedly ignoring the orders of the 357th District Court and the Thirteenth Court of Appeals and fraudulently declaring that said community property is solely his and not the [Plaintiff's] and by fraudulently disposing and intentionally converting said community property in violation of [Plaintiff's] rights to said property as determined by the the [sic] various court orders in the Parties divorce proceedings.[183]

Plaintiff does not identify which orders of the 357th District Court and the Court of Appeals De-

fendant allegedly ignored.  Neither court ordered Defendant to return any community property to

Plaintiff.[184]  Although the Divorce Decree did order Defendant to deliver to Plaintiff certain prop-

erty contained in Exhibit A, the Court of Appeals reversed and remanded the inequitable division

of the community estate on appeal.  At the new trial, Plaintiff was awarded a monetary judgment

---

[180] ECF No. 74-10 at 12, ¶ 46.  *See also* ECF No 75-4 at 6, ¶ 3.
[181] ECF Nos. 74-10, 75-4.
[182] ECF No. 76-1 at 22.
[183] ECF No. 96 at 11, ¶ 26.
[184] ECF Nos. 75-3, 76-1.

in the amount of $197,853.98—which the Court of Appeals clarified was for the overall division of the community property—it did not mention the physical property itself.[185]

Additionally, Plaintiff's assertion that she was awarded $197,853.98 because Defendant intentionally, willfully, and recklessly converted her share of the community property is not supported by either the 357th District Court Judgment or the Court of Appeals Order.  Neither court found that Defendant converted Plaintiff's share of the community property.[186]  The Court of Appeals' reversal and subsequent monetary judgment by the 357th District Court was based on the Divorce Decree's inequitable division of the community property in the original divorce proceeding, not conversion.[187]

At trial, Plaintiff testified that Defendant never delivered the property the Divorce Decree ordered him to deliver,[188] and Defendant and Joseph Preston offered counter testimony that Defendant delivered a moving truck full of Plaintiff's property to her.[189]  Neither side provided corroborating evidence.  The Court finds that it was not conclusively established whether Defendant delivered the property in Exhibit A or not.  Therefore, the Court does not find that Defendant willfully and maliciously injured Plaintiff with respect to the property contained in Exhibit A because Plaintiff did not prove by a preponderance of the evidence that Defendant never delivered the property to her.

Moreover, Plaintiff's assertion that "[i]n no world could Defendant have believed that eighty percent of the community property belonged to him"[190] makes little sense.  The world in

---

[185] ECF No. 76-1 at 20–22.
[186] ECF Nos. 75-4, 76-1.
[187] ECF Nos. 74-10, 75-4, 75-10.
[188] ECF No. 110 at 3:19:50–3:21:00.
[189] ECF No. 122 at 3:01:30–3:08:35, 4:37:30–4:46:25.
[190] ECF No. 124 at 24, ¶ 76.

which Defendant believed 80% (or 85% or 86%)[191] of the community personal property belonged to him was the world in which the Divorce Decree actually awarded the property to him.[192]  The Court does not find that Defendant willfully and maliciously injured Plaintiff by believing that 86% of the community property belonged to him where that belief was justified by the Divorce Decree.  After the inequitable division of the community property by the Divorce Decree was reversed and a new trial was held, all Plaintiff had was a judgment against Defendant for her equal share of the community personal property.  Therefore, Plaintiff failed to demonstrate that Defendant committed conversion by asserting ownership in 86% of the community personal property, much less with the requisite intent to satisfy § 523(a)(6).

Accordingly, Plaintiff's request that this Court find $197,853.98 of Claim 7-7 for the 357th District Court Judgement regarding the division of community personal property nondischargeable pursuant to § 523(a)(6) is denied.

### III.    CONCLUSION

A Judgment consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.


SIGNED June 2, 2022


_____
Eduardo Rodriguez
United States Bankruptcy Judge

---

[191] In only two short paragraphs of her Post-Trial Brief, Plaintiff manages to allege three different percentages.  ECF No. 124 at 24, ¶¶ 75–75.  The Court of Appeals Decision stated that 86% of the personal community property was awarded to Defendant.  ECF No. 75-3 at 35.
[192] ECF No. 75-2.